Third case on today's docket, Tammy Bryant v. Dept of Aging, Mr. Geiser. May it please the Court, Doug Geiser for the State Defendants. The District Court's judgment should be reversed for three reasons. First, state agencies are immune from FMLA self-care claims, regardless of the type of relief sought. Second, that immunity also protects Littleton in her personal capacity, because the department remains the real party in interest, as the conduct here is inextricably intertwined with a leave entitlement that only the state as Bryant's employer can grant. And third, Littleton is also protected by qualified immunity for most of Bryant's claims, because no clearly established law precludes the handful of phone calls that took place here, and because Bryant has suffered no prejudice. And to begin quickly with the department's immunity, it is black-letter law. Just a second. You said she has immunity from most of Bryant's claims. So tell us the claims for which she does not have immunity. As far as the qualified immunity goes, we would concede that she does not have immunity from the claims for termination and retaliation for her taking family care leave and for self-care leave, and that's just because of the procedural posture. We have to accept that allegation is true, that she was terminated for that reason. Start again. No qualified immunity for what? Sorry, no qualified immunity for their two leave periods here, one self-care, one family care, and she claims that she was terminated, I suppose, in retaliation for each of them. And so those two termination claims, or if you want to look at them together, it's one termination claim, I suppose. But she also, of course, has the claims against the department itself, but as I was saying, it's black-letter law that states sovereign immunity protects against claims not only for damages but also for injunctive relief. So if Bryant had wanted to use the ex parte young exception, she needed to sue an officer in that officer's official capacity, and even then the claims against the department itself would have to be dismissed. But that immunity, that sovereign immunity, is also important to Littleton in her personal capacity. Let me ask you about that. I looked at the summary judgment motion, district judge's ruling. You did not make that argument in the district court, did you? Sovereign immunity for Littleton herself because the real party in interest is Texas or the agency. This was not addressed by the district court. We apologize. It wasn't raised. Not only not addressed, not raised. So what would be your authority for saying that we should address that as the first court? Generally, this is called a court of appeals. We review things. Sure. And we acknowledge that, but it is a jurisdictional question because this is not a qualified — that part of the argument is not a qualified immunity argument. It's a sovereign immunity argument. And so the contention is that the court is without power to adjudicate that claim against Littleton. And so that's why the sovereign immunity is important to her, even in that personal capacity. And so we submit that under this court's decision in Casimir v. Widman, that the panel is bound by that decision because of the rule of orderliness. The claims there were that the plaintiff was terminated in retaliation for taking family care leave and self-care leave just like Bryant. And this court concluded that in that scenario, the state remains the real party in interest. Well, you take the position that Casimir said controls it. However, the next case is pronounced, Modica, to the extent it's inconsistent. It is, therefore, if it is inconsistent, not controlling. It seems to me one way to read the two cases together is there's a fairly broad statement in Casimir, and I don't see anything in the facts of the case that describe the claim in Casimir. What exactly was the defendant in that case accused of doing? And so, therefore, if you're looking at real party in interest, how does that play out in Casimir? I don't think we have enough facts. And Judge Stewart's opinion in Modica, which is probably not how you pronounce it, says you've got to look at the facts. And what are the circumstances? Who would actually pay a judgment? What kind of judgment is this? This is back pay, I guess, in your case. And other issues like that. It does seem to me the two are reconcilable. One is a broad statement unattached to any facts, and the other, which really kind of flows from Penhurst, which indicates that it is possible to sue an official unless they are not the real party in interest. So let's say Casimir is not an automatic block to the claim against Littleton. How do we deal with real party in interest? Well, to take, I guess, the end of the question. So assuming if the court does want to revisit the issue and doesn't think that can be done. We're not going to revisit. We're going to have to decide what this law means. And the en banc court gets to revisit. Sure. Well, I guess in the first place we would submit that the facts in Casimir are indistinguishable from the ones here because it's a claim that the plaintiff took self-care leave and was terminated because of it. And those are the material facts. But that conclusion is correct even in this instance because, as I mentioned at the outset, all the conduct here and all the FMLA's provisions, the anti-interference, anti-retaliation provisions are all tied up with this leave entitlement where it's only meaningful that the state as the ultimate employer can grant. Littleton in her personal capacity, there's no meaningful sense in which she in that capacity can grant leave. And that's why the Fourth Circuit explained in Lizzie v. Alexander that allowing this type of damages claim to proceed would impermissibly subject the state to second-guessing by a federal court regarding its personnel policies and personnel decisions. And you mentioned the back pay, Judge Southwick, and that's also important because that further shows that this is a complaint about the contract between the state on one hand and Bryant on the other because, again, there's no meaningful sense in which Littleton in her personal capacity pays wages or can pay back pay. And that's why other circuits have held, like the Seventh Circuit in Omos-Segbon v. Wells, that a suit for back pay does not bear any meaningful resemblance to a personal capacity suit. And so because the Congress failed to validly abrogate the state's immunity, the plaintiffs can't affect an end-run around that failure by suing the individual supervisor instead because you would end up in the same place with the state either granting the leave entitlement or having to indemnify its employees. And so you would, again, be in the same place as if Congress had validly abrogated that immunity. Is that it? I'm sorry. No, go ahead. What do you consider to be the damages alleged here? She got all the family leave, not talking about the termination, but insofar as the family leave itself, which may come up more in the interference claim than on here. But what are the damages, as you understand it, insofar as what Littleton did to interfere with her family leave? So we're just talking about interference damages? Moving to the interference, it occurred to me as I started to ask the question, I was moving you ahead. If you have more to say on the other, you can get back to it. But tell me how the damages work in your mind when you're talking about interference, when she got all the leave that she had requested. Right. Well, that's one of the two reasons that the interference claims fail as a matter of law, because she has not alleged any damages that are actionable under the FMLA. Emotional distress, et cetera, not actionable. Not actionable under the FMLA is this Court. And I think every court to address the issue has held, but certainly this Court, as we cited in our brief. And so that's even if there were some technical violation of the FMLA because of the phone calls between Bryan and Littleton, so even if there were some technical interference there, the claims still fail as a matter of law because she has not alleged any injury that's actionable under the statute. And that also applies to the— Are the only recognized damages pay in your mind? No. It can be in the absence of something like back pay, like lost wages or lost benefits, something along those lines. There can be some other monetary loss as long as it's monetary and sustained directly as a result of the violation. So I think the standard example would be if you were out on leave to take care of a sick family member, you ended up having to work because they interfered with your leave, and you had to pay somebody to come see over your sick family member instead of you, that's a monetary loss that you can recover for. But she hasn't alleged anything like that. The only allegation here, as far as I'm aware, is pretty much the lost wages. And then there is also the claim for the reassignment between the Driscoll unit and the Childress unit. But there, I think her only allegation is emotional distress in the form of some hurt feelings, which, again, is just not actionable. So while we're on qualified immunity, though, the second reason that those claims fail besides the absence of any actionable injury is that, as Your Honor indicated, she has admitted that she took all the leave she wanted. She started the leave when she wanted, and she finished the leave when she wanted. And so her only response is that, well, these phone calls deprived me of that benefit. But there's no right in the FMLA to be left alone. Multiple courts have held. Some contact is permissible between the employer and the employee, which makes sense because the FMLA is designed not only to accommodate the medical needs of the employees but also the workplace needs of the employer. And so even if we were — and even if we were incorrect about that, she still has not cited any controlling authority or the robust consensus of persuasive authority that would be required to overcome the qualified immunity defense. And so for those reasons — For the interference claim. For — that applies to the phone calls and the transfer between Driscoll and Childress, which I think is better viewed as a retaliation claim, but I think she may have presented it also as an interference claim. And as far as any alleged violation there, she admits that she had, in both positions, the same duties, the same salary, and the same number of employees working under her. But in district court, you didn't contend that that reassignment wasn't an adverse employment action. Well, our argument here isn't that it's not an adverse. Your argument is not that here. Okay. No. Well, our argument is that it doesn't violate the statute because there has to be some kind of material difference between the two positions. And our argument is that even if there were some kind of violation of the statute, that, again, it wouldn't be actionable. The reason that I'm hesitating a bit on the adverse employment action is, as we flagged in the brief, I think some other courts have continued to equate the definition of adverse employment action under the FMLA to the Title VII definition, which makes sense until you look at the remedies. And because the definition of the injury should be tied in with the remedies, I would urge the court not to adopt that definition, especially when it's not necessary because under any definition of adverse employment action, she is not alleged to violation of the statute. Identify for me. You started this. Let me just follow up on that. She is not alleged to violation of the statute for the job change as opposed to the termination. Exactly. You concede the termination is an adverse employment action. Yes, for purposes of the interlocutory appeal. Right. But for the transfer between she was residence director of one unit and then was transferred to another unit. Right. Judge Southwick, I believe you're. My turn? The issues that you helpfully laid out in response to Judge Barksdale's first question about what you thought was still alive, what is still in this case even if we accept your arguments? If you accept all of our arguments, as we hope you do, the only claim that should survive with a caveat that I'll get to about the disciplinary actions, the only claim that should survive is the claim for terminating her in retaliation for the family care leave. The termination for self-care leave would be taken care of due to the real party interest issue. Everything else would be solved by qualified immunity. Now, the one caveat about the disciplinary actions, and that's the first level reminder of the counseling letter that you may recall from our statement, but those would not be in and of themselves actionable, again, because there's no prejudice suffered, no actionable prejudice. But I think her allegation is that those disciplinary actions form the basis, impermissibly form the basis of the decision to terminate her. And so given the procedural posture, we'd have to concede that those are relevant. But otherwise, it's just really the termination for taking the family care leave. All right, Counselor. Thank you. Thank you. I didn't want to suggest that I was accepting all his other arguments. I just wanted to be clear. Good morning. My name is David Matley, and I represent Tammy Bryant in this case. I guess just briefly to address the sovereign immunity issue and the ex parte young exception, I recognize there are some confusion with regard to whether the exception carved out requires state officers to be sued in their official capacity as opposed to their individual capacity. On this point, I would refer to Idaho, and I'm going to probably butcher this name, which is a Supreme Court decision. The Cure de Alene tribe of Idaho, where the Supreme Court specifically said and acknowledged certain suits seeking declaratory and injunctive relief against state officers in their individual capacities. So in that case, the officers were only named in their individual capacities. This is the argument that you relied in your brief on Nelson. Is the case you just cited in your briefs? It is not, Your Honor. I apologize. As I was preparing for this hearing, I ran across this case to try to get this. I can give you the site. It is 521 U.S. 261. This court has also, I guess, added to the confusion. Although none of these cases specifically address this issue, in Melder v. Allstate, which is a Fifth Circuit case, 404 F. 3rd 328, Judge DeMoss, in his dissent, acknowledged the Ex Parte Young exception for suits for declaratory and injunctive relief against state officials in their individual capacities. Is that a new authority, too? Yes, Your Honor. I would suggest, even just on these two, submit a 28-J letter to us by tomorrow on new citations. Absolutely, Your Honor. And, of course, I'm opposing counsel. So what is the declaratory and injunctive relief you're seeking? Reinstatement would be the only remedy that we seek that would fall under this. What is your authority that reinstatement is declaratory or injunctive relief? I can provide that as well. It's well established the courts have all held that reinstatement would be prospective relief that would be allowed under the exception. I would submit that, for one, this issue was not addressed by the district court. It was not briefed or addressed. But with that said— Wait a minute. It was not briefed by whom? By either party. I don't believe that this issue was properly before the district court. The Ex Parte Young exception? Yes. But with that said, should this become necessary, we will seek to amend our complaint and remedy any deficiencies and identify Ms. Littleton in her official capacity as well. But I do not believe— Well, I suppose because it, again, touches on jurisdiction, we can address it sua sponte. And, of course, we reviewed de novo the denial of summary judgment. We're plowing new ground as far as we go here. We're not relying on or bound by the district court's opinion in any way. Yes, Your Honor. I would suggest or argue that the Ex Parte Young is not even necessary to decide this case. I do not believe the state has immunity in this case regardless. As the district court held, and I believe correctly, the state was not entitled to 11th Amendment immunity because Ms. Bryant is not seeking money damages against the state, only equitable relief. The FMLA specifically allows both money or equitable damages. And Hibbs— What exactly is the relief she's seeking? Reinstatement? Reinstatement. That's it? Against the state, yes. Yes, Your Honor. What's she seeking against Littleton? Money damages. For what? For unlawful termination, wrongful termination, back pay, front pay. She's seeking back pay from an employee? She's seeking the damages that she would have—if you want to term it back pay, that would be the way it would be termed. You called it back pay. It would be equivalent to back pay. It's the money that she lost as a result of the wrongful termination, which would be equivalent to a back pay claim. In Hibbs, it's well established and the court acknowledged that Congress intended to abrogate states' immunity when they enacted the FMLA. In Hibbs, they looked at a specific provision, which was the family care provision, and they held that that was a valid abrogation of states' immunity, and therefore an employee could seek monetary damages for that wrongful termination. For health care? For the family care provision, yes, Your Honor. But not for self-care? Not for self-care. They did not address self-care. Right. Later in Coleman, they did address self-care, and they did say that, well, self-care provision was not a valid abrogation of immunity, therefore an employee could not seek monetary damages. And the important thing to look at is neither court looked at the equitable relief that was provided under the FMLA. Neither court stated that they were not allowed to receive or seek equitable relief, which is what we're seeking here. Therefore, I think that the court should follow the express language of the statute, which does provide for equitable relief along with monetary damages. I think with regard to Ms. Littleton being entitled to sovereign immunity, as the court correctly pointed out, this was not the sovereign immunity as a real party. Sovereign immunity? They're arguing that she's entitled to the sovereign immunity simply because the state was a real party in interest. And I think that has been addressed several times by the court, specifically in Modica, that says state employees can be individually liable under the FMLA. But if they're the real party in interest, and it seems to me if you're looking for back pay, at least the nature of the relief is something that would be against the state, that would normally be an obligation of the state. It sounds like an end run around sovereign immunity to get your back pay from Littleton rather than from the state, which you can't because of sovereign immunity. So it's one thing to say we ought to read these somewhat challenging opinions from the Fifth Circuit on sovereign immunity to allow suits against individuals to defend a suit in the individual capacity based on the facts. But it seems like these facts tend to say sovereign immunity would apply if we get to it. Your Honor, these facts are almost identical to Modica as well as after Modica, the court in Bellow v. LeBlanc, which is an unpublished opinion. Which did not reach sovereign immunity. Pardon me? Which did not reach sovereign immunity. It reached the issue. Well, it referred the issue of the state as a real party. And it said because the district court didn't address that, they were sending it back to the district court to address. And when the district court did address it, the court, following other jurisdictions, has held that there was no state as real party interest. For one, there's nothing obligating the state to pay an award against an official in their individual capacity. And it distinguished itself from cases like the FLSA and things like that where the damages would be so great that it wouldn't be reasonable to expect an official to pay that. The court distinguished those cases because in those cases, the plaintiff was challenging a state's policy. An official's enforcement, if you will, of a state's policy. The same is not true in this case. We're not challenging Ms. Littleton's enforcement of a state policy. We're challenging her unlawful violation of the state's policy. The court went on to say that indemnifying the defendant was not inescapable as under Lutter. The court found exposure related to satisfaction of a judgment from a single plaintiff was no greater than any other lawsuit filed on any given day. Thus, indemnity cannot be said to be inescapable, which is what was required in order to define the state as a real party. In this case, there's nothing binding the state to pay any judgment against Ms. Littleton, nor is there any policy of the state that we're attacking. With regard to Ms. Littleton's qualified immunity defense, again, I'm a little confused by the defendant's arguments on what is and what's not. The damages I would submit that damages from the retaliation that she incurred, even though she received all of the leave that she was entitled to receive, as a result of Ms. Littleton's actions in micromanagement and constant belittling and disciplining, Ms. Bryant was required to extend her leave because of the emotional distress and the problems it was causing her. This case is a little different, and I put it in my brief. Each case under this is a fact-specific circumstance. You have to look at the facts of the case. In this case, Ms. Bryant was out on leave because of the emotional stress that she was receiving at work. Her doctor said, you can't handle it, you need to get away from it. Therefore, she went out on leave. Now, this was unpaid leave, so the fact that she received the leave that she was entitled to does not necessarily mean there's no damages related to the interference of her taking that leave. As counsel points out and defendants point out, a few phone calls may not represent interference, but I don't think the court should state or get in the position of determining what constitutes interference. Is it three calls? Is it five calls? As a matter of law, more than ten calls constitutes interference, or does it matter what they say? I believe that's a fact question. What's important here, though, is what Littleton would have known. Didn't she need to know that one call or three calls or ten calls would have violated the Family Medical Leave Act in order for qualified immunity to be withheld? So if she was not in a position to know what she was doing was clearly incorrect, that's a factor in qualified immunity, not something in your favor. I think that would be a fact question on whether she knew or not. I believe that she knew that interference... We're talking about subjective knowledge, but we're also talking about objective. Would an objective person know, based on the law that existed at the time, that such actions would have violated the Family Medical Leave Act? I think the law established at the time and since and has been well established that interference with a person's right to leave is a violation of law. Now, what constitutes interference is a myriad and infinite number of things that could be discussed, but clearly she knew and the law was well established that interference was a violation of the law. If just what's your best authority, even remotely analogous, that calls can get to the point of interference? Your Honor, I could not find a single case one way or the other. I think, again, each case is fact specific. It depends on the nature of the calls, the reason for the calls, and the nature of the leave being taken. As I pointed out in my brief, in one case, if you're staying home because you have a sick child, then you might be able to take 10, 100 calls a day and respond to emails and just do your normal work from home. However, if you're at home because you're suffering from severe panic attacks, depression, and anxiety, all caused by work, I don't believe it would be reasonable to be calling home. The first leave period was family leave to take care of her husband. Yes, Your Honor. Yes. She received a few calls then. There is, as we've agreed, no sovereign immunity for family leave. The second leave was self-care, and that's where she was called, and then an investigator came to her home and she refused to talk to him, et cetera. But, of course, if we hold that she can't recover for self-care from the state, then we've got to look to see whether she can recover from Miss Littleton either under qualified immunity, whether that's clearly established that calling and having an investigator come talk to you is clearly established as equaling interference. Is that your understanding? Yes, Your Honor. That would be my understanding, and my argument would be those would be fact questions. What constitutes interference? I don't think courts want to get in the position of deciding what every single possible scenario would constitute interference. So I think in this case, based on the circumstances as to why she was home, the fact that Miss Littleton admitted that she saw no reason why the calls couldn't have waited or why the investigation couldn't have waited, there was no reason to send anybody to Mrs. Bryant's home to try to interrogate her. There was no reason to ask her to come in. Of course, the question arose because she changed the leave request on her own and misstated what the doctor had said. I understand, Your Honor, and I'm not— As the amount of leave needed. I do not dispute that they did not have a right to question her or to investigate that, which they did prior to granting her leave. There was not an issue. Miss Bryant was not aware of any issue related to that. My argument would be that investigations, those questions, could have waited until she returned from leave, and Miss Littleton acknowledged that. There was no reason that they could not have waited to do that. Again, looking at it in terms of qualified immunity issues,  and was there any violation of family medical self-care leave by not making it wait? It's one thing to get somebody to admit that it could have waited. And I would argue that it did have to wait based on the circumstances in this case. The fact that Miss Bryant, the reason for her leave, the reason that she was on leave, was all due to stress related to work, her panic attacks, her anxiety. She couldn't function. She was incapacitated. And the fact that they did, in fact, do this, she was required to even prolong her leave and not return what she had originally anticipated. So I think the facts of this case are specific and unique, and Miss Littleton's actions did constitute interference, which she acknowledged did not have to happen at that time. And certainly the termination afterwards was interference or retaliation for taking the leave is what we argue. All right, counsel. Thank you. Do we have your argument? If you may, please accord it two broad points in rebuttal. First, as to the number of calls, my friend's argument, which was also made in the brief, was that the existence of a violation seems to turn on the nature of the medical problem that forms the basis for the leave request. But I think he's also admitted that there is no clearly established law on this point, hasn't cited a single case to support that interpretation, much less the controlling authority or robust consensus of persuasive authority that would be required to overcome qualified immunity. And to the contrary, at least two of the cases we've cited, like Callison and O'Donnell from the Third Circuit, involved similar ailments involving stress and anxiety and what have you. And so I think that points just the other way from controlling to the clearly established law. Well, part of it comes down to what level, as the case law says, of generality you need for something to be firmly and clearly established. It seems to me that if the calls are sufficient, which may be a fact question, basically to interfere with it even being leave, it's almost as if the person was still at the workplace. You're not giving the benefit of the leave to the individual. Is there no case law that – what is the best description of the case law for what interference means that would be actionable? There's certainly no bright line. The case to describe it as being it has to deprive them of the benefit. I think there are cases, as we acknowledged in the brief, that at some point the phone calls might become so pervasive. If you impose work, that would be one thing. Not if it's just one work call. The calls that – I'm sorry. No, you're right. Go ahead. Finish. I just want to say the calls can be work-related. But aren't the callous in line of authority those you have a right to be – you don't have a right to be left alone when the calls relate to the reason for the leave? They go both ways. Some cases involve calls relating to work. Some cases involve calls relating to the details of the leave and that, to the extent that we're concerned about the self-care leave request because that was the one that was induced by the stress and panic attacks and so forth. Those calls between Bryan and Littleton pertained only to the details of the leave request. And those are authorized by the FMLA and its regulations. And so that can't possibly constitute a violation. And, again, even if there were some technical violation, there still has been no actionable injury. I did want to address this issue of the allegation that Littleton violated the state's own policy. And I'm not sure that's entirely so clear from the complaint. But even so, I don't think that should change the result for a couple reasons. Well, before you leave that, what is meant? I mean, it appears twice in the district court's opinion. The record shows Littleton knew she acted outside her discretionary authority, and I forget what he said earlier in the opinion. Regardless of it being contested, what's he talking about? There, the only thing that I can understand him talking about has to do with his understanding of the disciplinary policies. But there's nothing in the opinion, and I don't think there's anything in the allegations, about Littleton violating the actual personnel leave policy. And I think you can somewhat infer that from the fact that they've also sued the department as well, kind of indicating a unity of action there. But even so, a couple reasons why that shouldn't change the outcome anyway. First, federal courts don't have the authority to enforce violations of state law. And so if the only reason that Littleton might be liable is because she violated a state policy, then you're in the Pennhurst situation, and that's not something that concerns a federal court. Second, and I think this is also important, is that you can't divorce the substantive entitlement aspect of the state policy from the remedy aspect of the state policy. And so even if the state wanted to provide leave in the exact same manner as the FMLA, that does not mean that the state also wanted to open its individual supervisors up to claims for back pay in federal courts. Because the problem is that the choice of the remedy, the choice of the state's remedy, informs the choice of the scope of entitlement. And so had the state known that it would be opening itself, essentially in a sense abrogating its own immunity, at least substantively, it may not have chosen such a broad entitlement. And so I think at most compliance with the policy might be sufficient to invoke the real party and interest status, but it's not necessary because, as we've discussed, all this conduct is tied up with a leave request, a leave entitlement and the back pay that only makes sense as applied to the state as Bryant's ultimate employer. Thank you. Thank you. Thanks to both counsel.